UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., and AMAZON.COM SERVICES, LLC,<br><br>                Plaintiffs,<br><br>    v.<br><br>YAUHENI DAUZHANOK,<br><br>                Defendant. | CASE NO. C24-825 MJP<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiffs' Motion for Default Judgment and Permanent Injunction. (Dkt. No. 19.) Having reviewed Plaintiffs' Motion and all supporting materials, the Court GRANTS the Motion, ENTERS default judgment against Defendant Yauheni Dauzhanok, and PERMANENTLY ENJOINS Dauzhanok on the terms set forth in this Order.

**BACKGROUND**

Plaintiffs Amazon.com, Inc. and Amazon.com Services, LLC ("Amazon") allege that Defendant Yauheni Dauzhanok, a resident of Belarus, operated a company that assisted "bad actors in evading Amazon's" seller approval and anti-counterfeit measures that proliferated the sale of counterfeit, inauthentic, and fraudulent products on the Amazon Store. (See Complaint. ¶¶ 2-5.) Amazon alleges that Dauzhanok sold two services: (1) the "ungating" of Amazon selling accounts that allowed the account to sell otherwise restricted products; and (2) the sale of Amazon selling accounts that were already "ungated" or which had other attractive features. (Id. ¶¶ 52-60.) Dauzhanok charged fees between $595 to $9,999 for each ungating service, and represented on his company's website that he had performed over 500 "ungatings." (Id. ¶ 54.) Based on these representations, Amazon alleges that Dauzhanok derived at least $297,500 in revenue. (See Declaration of Scott Commerson ¶ 10 (Dkt. No. 20).) Amazon does not identify what Dauzhanok charged for the sale of already ungated Amazon selling accounts.

Amazon alleges that Dauzhanok's actions worked to circumvent Amazon's Business Solutions Agreement ("BSA") and its incorporated policies, which, among other things, requires that sellers provide documentation to authenticate the products they sell and forbids the transfer of selling accounts. (See Compl. ¶¶ 38-51, 78.) Amazon does not allege that Dauzhanok ever agreed to be bound by the BSA. Instead, Amazon alleges that Dauzhanok became bound by Amazon's Conditions of Use by "us[ing], and specifically target[ing], services in the Amazon Store through their services targeting Amazon, and they had actual or constructive notice of the Conditions of Use." (Id. ¶ 26.) The Conditions of Use contain a forum selection clause and Washington choice of law provision. (Id.)

Amazon pursues three claims: (1) fraud; (2) intentional interference with contractual relations; and (3) unjust enrichment/restitution. (Compl. ¶¶ 72-84.) After serving Dauzhanok in Tacoma, Washington, and obtaining default, Amazon now moves for default judgment on all three claims. (See Dkt. Nos. 12, 16, 19.) Although Amazon sued the Wyoming-based limited liability company that Dauzhanok purportedly used to operate his business, and several "Doe Defendants," Amazon has dismissed those entities and individuals to preserve diversity jurisdiction. (Dkt. No. 26.) As such, this Order applies only to Dauzhanok.

## ANALYSIS

**A.     Legal Standard**

The Court has discretion to default judgment. Fed. R. Civ. P. 55(b); see Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (quotation and citation omitted). And "[t]he district court is not required to make detailed findings of fact." Id.

**B.     Jurisdiction**

Before entering default judgment, the Court must assure itself that it has subject matter jurisdiction and personal jurisdiction over Dauzhanok.

1         First, as the Court explained in its Order Dismissing Defendants, it now has assured itself
2    that there is complete diversity jurisdiction. (Dkt. No. 26.) As alleged, Dauzhanok is a resident of
3    Belarus, while the Amazon Plaintiffs are entities with citizenship in Washington and Delaware.
4    (Compl. ¶¶ 19-20.) Moreover, the amount in controversy exceeds $75,000. As such, there is
5    diversity jurisdiction. 28 U.S.C. § 1332(d).
6         The Court also finds that it has personal jurisdiction over Dauzhanok, who is a
7    nonresident. First, Amazon has alleged that Dauzhanok agreed to Amazon Conditions of Use,
8    which states: "Any dispute or claim relating in any way to your use of any Amazon Service will
9    be adjudicated in the state or Federal courts in King County, Washington, and you consent to
10   exclusive jurisdiction and venue in these courts." (Compl. ¶ 26 & FN 23;
11   https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM
12   (accessed January 8, 2025).) This alone satisfies the Court that it has personal jurisdiction. See
13   Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1406–07 (9th Cir. 1994). Second, the Court finds
14   that it has personal jurisdiction due to Dauzhanok's purposeful direction of his activities in this
15   forum, pursuant to Fed. R. Civ. P. 4(k)(2), the federal long-arm statute. Under Rule 4(k)(2),
16   personal jurisdiction may be established over a defendant if the claims arise under federal law
17   and: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction;
18   and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed.
19   R. Civ. P. 4(k)(2). To measure whether the exercise of personal jurisdiction is consistent with the
20   Constitution, the Court engages in a "due process analysis [that] is nearly identical to the
21   traditional personal jurisdiction analysis with one significant difference: rather than considering
22   contacts between the [defendant] and the forum state, we consider contacts with the nation as a
23   whole." Lang Van, Inc. v. VNG Corp., 40 F.4th 1034, 1039 (9th Cir. 2022) (citation and
24

quotation omitted). To satisfy due process in this context, Amazon must demonstrate that: (1) the nonresident defendant has either purposefully directed his activities at the United States or purposefully availed himself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). If Amazon satisfies the first two elements, the burden shifts to Dauzhanok to make a compelling case that the exercise of jurisdiction would not be reasonable. Id. To establish "purposeful direction," the Court applies the three-part "effects" test from Calder v. Jones, 465 U.S. 783 (1984), which requires that the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (quotation and citation omitted).

The Court finds that Amazon has satisfied the requisite elements of Rule 4(k)(2). Amazon pursues claims against Dauzhanok, who is outside of any state court's general jurisdiction. And the Court finds that the exercise of personal jurisdiction comports with the Constitution. The Court points to three factors supporting this latter finding.

First, Dauzhanok purposefully directed his activities at the United States. All three elements of the "effects" test are satisfied. One, Dauzhanok advertised and directed his services at Amazon, whose principle place of business is in Washington. (Compl. ¶ 25.) Two, Dauzhanok directed his services at residents in the United States, including those here in Washington. Three, it was foreseeable that Dauzhanok's marketing and sales of the services would harm Amazon in the Washington, where it is headquartered.

Second, Amazon's claims arise out of Dauzhanok's forum-based activities. The Ninth Circuit "relies on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction. <u>Ballard v. Savage</u>, 65 F.3d 1495, 1500 (9th Cir. 1995). Amazon has satisfied this by showing that its claims would not exist but-for Dauzhanok's sale of fraudulent services that target consumers and residents in the United States.

Third, because Amazon has satisfied the first two prongs of personal jurisdiction under Rule 4(k)(2), the burden shifts to Dauzhanok to show personal jurisdiction is not reasonably exercised here. By failing to appear in this matter, Dauzhanok has conceded that the exercise is reasonable. But for the sake of completeness, the Court has considered this factor and finds that the exercise of personal jurisdiction is reasonable. The Court does so by balancing the following factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

<u>Rio Properties, Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1021 (9th Cir. 2002). The balance of these factors shows that that the exercise of personal jurisdiction is reasonable. Dauzhanok purposefully directed his activities at the United States. There is no evidence of the burden on Dauzhanok in defending himself in this Court or conflicts with the sovereignty of a foreign state. The United States has an interest in making sure that Amazon's rights are protected and this forum can efficiently resolve the conflict. And Amazon has an interest in obtaining convenient and effective relief in this Court where there are no alternative fora identified. Accordingly, the Court finds the exercise of personal jurisdiction to be reasonable.

**C.    <u>Eitel</u> Factors Favor Default Judgment**

The Court reviews the <u>Eitel</u> factors to assess whether default judgment should be entered and in what specific amounts. On balance, the seven <u>Eitel</u> factors weigh in favor of entry of default judgment in Amazon's favor.

**1.    Factor One: Prejudice to Amazon**

Without entry of default judgment Amazon will be prejudiced. Amazon has attempted to litigate this case and vindicate its rights under state law against Dauzhanok. Dauzhanok failed to appear or participate in this litigation despite being served. Amazon faces prejudice by not being able to obtain complete relief on its claims against Dauzhanok without entry of default judgment. This factor weighs in favor of granting default judgment.

**2.    Factors Two and Three: Merits of Amazon's Claims and Sufficiency of the Complaint**

Amazon has demonstrated the merit of its claims and the sufficiency of the Complaint. The Court reviews each claim.

**a.    Common Law Fraud**

The nine elements of "intentional misrepresentation (fraud) are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff." <u>Carlile v. Harbour Homes, Inc.</u>, 147 Wn. App. 193, 204–05 (2008) (citation and quotation omitted).

Accepting the Complaint's allegations as true, the Court finds that Amazon has proved its fraud claim. First, Amazon alleges that Dauzhanok submitted fake documentation to Amazon to help bad actors ungate accounts to sell counterfeit goods. (Compl. ¶¶ 5, 52; Commerson Decl. ¶

1  3, Ex. 3.) He did so by making false representations of existing facts that were materially false

2  and which Dauzhanok knew to be false. (Compl. ¶¶ 5, 52-54, 74.) Additionally, Dauzhanok is

3  alleged to have done so with an intent for Amazon to rely on his statements. (Id. ¶¶ 52-54, 74.)

4  Lastly, Amazon has alleged that it reasonably relied on Dauzhanok's representations and

5  suffered damages to its goodwill and reputation, among other things. (Id. ¶¶ 69-71, 75.) The

6  Court finds entry of default on the claim proper.

7  The Court is not convinced that Amazon has sufficiently alleged a claim of fraud with

8  regard to the sale of existing Amazon selling accounts. Absent from the Complaint are cogent

9  allegations that Dauzhanok made any representations to Amazon in this process—just to third

10 parties. This is insufficient to state a claim. See Carlile, 147 Wn. App. at 204–05.

11              **b.    False Designation of Origin Claims**

12 To prevail on its claim for intentional interference with contractual relations, Amazon

13 must show "(1) the existence of a valid contractual relationship or business expectancy; (2)

14 knowledge of the relationship or expectancy on the part of the interferer; (3) intentional

15 interference inducing or causing a breach or termination thereof; (4) resultant damage." Cherberg

16 v. Peoples Nat. Bank of Wash., 88 Wn.2d 595, 602 (1977) (citation omitted). "The existence of a

17 valid enforceable contract is not necessary to the maintenance of the action and the possibility of

18 a remedy in contract does not preclude it." Id. (citation omitted).

19 Amazon has adequately alleged a claim for intentional interference with contractual

20 relations. Amazon has clearly alleged that Dauzhanok's services intentionally interfered with the

21 restrictions set forth in the BSA, and that Dauzhanok knew his services would so interfere.

22 (Compl. ¶¶ 15, 52, 58, 61-67, 78-79; Declaration of Robert Garrett ¶¶ 6-12 (Dkt. No. 21).)

23 Amazon has alleged how Dauzhanok's efforts interfered with its contractual rights and business

24

expectancy and the resultant damages. (Compl. ¶¶ 15, 52, 58, 61-67, 78-79.) The Court finds entry of default on this claims proper.

### c. Unjust Enrichment/Restitution Claim

Under Washington law, unjust enrichment is a "method of recovery for the value of [a] benefit retained absent any contractual relationship [contemplating the benefit] because notions of fairness and justice require it." Young v. Young, 164 Wn.2d 477, 484 (2008). The elements of an unjust enrichment claim are "a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." Id. In assessing unjust enrichment, the Court aims "to do substantial justice to the parties[.]" Id. at 488. "'Benefit' … denotes any form of advantage" and is not limited to "pecuniary advantage." Restatement (First) of Restitution § 1 (October 2023 Update).

The Court agrees with Amazon that it has stated a claim for unjust enrichment/restitution. Dauzhanok benefited from his access to and use of the Amazon Store and depended on that access to derive revenue. (See Compl. ¶¶ 6-18, 52-68.) Second, Dauzhanok had knowledge of this benefit by targeting his services at Amazon. (Id. ¶¶ 15-16, 83.) Third, Dauzhanok accepted this benefit and used it to violate Amazon's policies and to deceive Amazon and its customers. (Id. ¶¶ 17, 83.) Fourth, it would be unjust for Dauzhanok to retain any profits, which depended on violating Amazon's policies and contracts. (Id. ¶ 83.)

### 3. Factor Four: Sum of Money at Stake

Amazon avers that based on public statements Dauzhanok made, he generated at least $297,500 in revenue from selling his deceptive and fraudulent services. Given the size of the sales, this factor weighs in favor of default judgment.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 9

1         **4.     Factor Five: Possibility of Dispute of Material Facts**

2         The Court finds little possibility that the core, material facts are in dispute. Not only has

3 Dauzhanok failed to appear in this action, but Amazon have provided detailed evidence in

4 support of its claims that is likely difficult to be rebutted. This factor favors entry of default

5 judgment.

6         **5.     Factor Six: Whether Default is Due to Excusable Neglect**

7         There is no evidence that Dauzhanok's failure to appear is due to excusable neglect. This

8 factor favors entry of default judgment.

9         **6.     Factor Seven; Strong Policy in Favor of Decision on the Merits**

10         The Court maintains a strong policy preference in favor of resolution of Amazon's claims

11 on the merits. But Dauzhanok's decision not to appear in this case vitiates against this policy.

12 This factor weighs in favor of entry of default judgment.

13         \*     \*     \*

14         Having considered and balanced the <u>Eitel</u> factors, the Court finds that entry of default

15 judgment is proper on all claims as explained in detail above. On this basis, the Court GRANTS

16 the Motion.

17 **D.     Amount of the Default Judgment**

18         Amazon asks the Court to award $297,500 in disgorgement damages on its unjust

19 enrichment claim. Such a remedy is consistent with Washington law. <u>See</u> <u>Young</u>, 164 Wn.2d at

20 487-88. While the evidence of revenues is not robust—based solely on a public statement from a

21 website associated with Dauzhanok—the Court accepts that this is a reasonable and supportable

22 assertion of damages that should be disgorged. The Court therefore GRANTS the request for

23

24

entry of an award of $297,500 in damages, noting further that Amazon asks for no other damages.

**E.     Injunctive Relief**

The Court finds it appropriate to enter a permanent injunction against Dauzhanok largely on the terms Amazon requests. "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). And the Lanham Act authorizes "the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1137 (9th Cir. 2006) (quoting 15 U.S.C. § 1116(a)).

A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The Court finds that all four eBay factors favor entry of a permanent injunction. First, based on the accepted allegations in the Complaint, Dauzhanok's acts have caused irreparable harm to Amazon's goodwill and reputation and have caused it to incur expenses to prevent further damage. Second, Amazon has shown that monetary damages alone will not necessarily prevent Dauzhanok from engaging in further infringing conduct. Given Dauzhanok's decision not to appear in this case, there can be no assurances that he will no longer engage in the conduct

at issue in this case. This satisfies the Court that monetary damages alone are insufficient. Third, the equities favor Amazon, who seeks to enjoin Dauzhanok from engaging in illegal conduct that benefits only him. This favors Amazon and the requested injunction. Fourth, an injunction Dauzhanok from engaging in further conduct that infringes on Amazon's contractual rights and business expectancy will serve the public interest. The Court GRANTS the Motion and ENTERS the following PERMANENT INJUNCTION against Dauzhanok:

    1. offering, marketing, advertising, distributing, or selling any service designed to submit falsified documentation on behalf of sellers or otherwise circumvent Amazon's processes for seller approval and product authentication;

    2. opening, selling, transferring, and/or brokering the sale or transfer of, Amazon selling accounts;

    3. assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (a) through (b) above.

The Court does not issue this injunction as to Dauzhanok's "officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them," as was originally requested. The Court declines this broad request given the dismissal of the other named defendant and the Doe Defendants. The Court also declines Amazon's request that the aesmart.io domain be transferred to it in order to prevent further harm. The Court believes that the injunction, as broadly fashioned above, is sufficiently broad to render the need for this broader, more extraordinary relief unnecessary.

The Court also retains jurisdiction over this case for the purpose of enforcing this Order and Injunction.

## CONCLUSION

The Court GRANTS Amazon's Motion for Default Judgment on all three claims and AWARDS $297,500 in damages and PERMANENTLY ENJOINS Dauzhanok on the terms set forth above.

he clerk is ordered to provide copies of this order to all counsel.

Dated January 15, 2025.

Marsha J. Pechman
United States Senior District Judge